May it please the Court, Counsel. Your Honors, my name is Matthew McHenry and I represent Mr. Marcos Ramirez, the defendant and petitioner in this case. And I would like to reserve two minutes for rebuttal. Your Honors, according to everybody involved in this case, that includes the trial prosecutor, the district court, and this Court on direct appeal, the grand jury, the most damaging and prejudicial evidence that was admitted against the defendant. Without that testimony, had that testimony not been admitted, there is certainly a reasonable probability, one sufficient to undermine confidence in the outcome, that the outcome of the trial would have been different. Moreover, and more importantly, the reason why we're here today is that Mr. Ramirez's trial counsel had every opportunity, several opportunities, to keep that testimony out. It was clearly inadmissible on several different grounds. And can I interrupt you there? Because one of the problems I have is in trying to understand our prior decision in this case, where we said Ramirez's grand jury testimony, which was thoroughly damaging to Marcos, was available. It became admissible as to Marcos Ramirez when Kathy invoked her privilege not to testify in court against her spouse. Why aren't we bound by that ruling? Well, Your Honor, that grand jury testimony was admissible. I – that is certainly a statement that this Court made on direct appeal. That statement was dicta. It's not supported by any analysis. The issue of whether that – But you're aware that we're bound by the dicta of prior panels. I am, Your Honor. But that particular statement, first of all, that issue wasn't presented to this Court on direct appeal. The actual admissibility of that testimony was not an issue that was before the Court. What the Court did there with that single sentence, where it didn't do any analysis on it, was simply reiterate what the district court had ruled. And I submit it ruled erroneously. What the district court had said was, if she claims that privilege, then that testimony can come in under the prior testimony exception. Now, that's an erroneous ruling. And this Court did not look at that at all on direct appeal. And that Court's statement is essentially – it's almost a direct quote, but it's essentially a summary of that ruling by the Court. It was simply – what the point of that court of appeals decision was, the issue that was presented to them was whether the fact that Ms. Ramirez had been forced to invoke her privilege before the jury had some kind of prejudicial effect on the case. And what this Court said was it didn't because it came in any way because of this district court ruling. So you would have us look to other cases that we have that say where a prior panel did not focus on that specific issue, then were not bound by its ruling. Is that – is that your argument here? That is an argument. That is my argument, Judge. And again, the argument that I don't think that that wasn't a holding of this case. It certainly wasn't an issue that was presented to this Court. It was simply them saying the reason it's not prejudicial is because it came in any way, because the district court allowed it. If there had been some analysis around that statement – Came in any way and was admissible. I'm sorry? It came in any way and was admissible. Correct. In terms of at least that was what the district court found. If there had been some analysis around the statement – Well, Your Honor, I'm not sure the Court of Appeals did. I respect that position. But because, again, if there had been some analysis, something saying it should – it would have come in under 801d1 anyway, it would have come in under the residual clause, it would have come in under the confrontation clause, then certainly this Court would be bound by that ruling. But in the context of that statement, which is just a very short paragraph, as this Court knows, it simply was not a statement that I think this Court should or can be bound by. You're saying we have a rule that well-considered dicta is binding. This was not well-considered. I would agree with that statement, Judge. And well-considered means any time it's wrong or not well-considered? Well, Your Honor, I think well-considered certainly means some level of analysis by this Court when making a statement. Let me ask you about two other rulings in this prior case, which I'm concerned about. You're making an ineffective assistance of counsel claim. And as to two of the bases for that, the failure to sever the trial and, second, Kathy Ramirez's invocation for her marital privilege, we said in that prior decision that those were harmless errors. And so for your ineffective assistance of counsel claim, to the extent they're based on those two errors, aren't we bound to say no prejudice because we've already determined those were harmless errors, so under Strickland there was no ineffective assistance of counsel? Well, Your Honor, for those two particular – obviously, those aren't our only claims of ineffective assistance – but for those two particular claims, one of which was a claim that there was a particular marital communication that should not have come in, I believe it was related to a statement made regarding a certain meth cook that was going on by the Jenkins's, that statement in particular is not addressed in our current 2255 motion. And the failure to sever the case, as it was raised on direct appeal, the issue was that the district court should have sua sponte, severed that case. And because there was no motion made by the trial counsel at the trial level, this Court was reviewing that under a harmless error analysis. That certainly is one of our claims, that trial counsel should have moved to sever this case and would have protected his client against that damaging testimony regardless. But I think the focus of this Court should be not just only on those two particular pieces, but also this idea that there was an opportunity here to make a very clear, unambiguous, not a novel argument that this particular testimony should not have come in, in this case. Well, didn't trial counsel, when I went through the record, it appears he did object to the admission of the grand jury testimony, at least under the rule 801D1A. I mean, there was a couple of places in the record where he objects and the district – the Court just, you know, runs over him. So it's hard to say that he was deficient in his performance just because he couldn't convince the district court. If that were the standard, every losing counsel would be ineffective. I agree with that, Judge. And my response to that is this. That – the trial counsel in what was granted a very difficult, long, I think it was a two-week case, made several objections to this marital testimony coming – to this grand jury testimony coming in. The problem was he never made the correct argument, particularly under 801D1A. That has two requirements. The first is that the declarant has to be available – has to testify at the trial. And number two, that the declarant has to be subject to cross-examination concerning that statement. Trial counsel argued that she would not be testifying at trial. That was incorrect. She had to testify because of the co-defendants. What he never argued, the objection he never made, was the objection based on Owens and Vargas, and that is that when you've invoked a privilege, you are not subject to cross-examination concerning the statement. That was the winning argument, and that was the argument that was never made. And I – I would also refer the Court to Kimmelman v. Morrison that discusses the idea – I think I actually have the quote in here – that even in a situation where trial counsel has tried an otherwise good case, a single serious error can support the claim of an effective assistance. And that's what we're dealing with here. Trial counsel did an admirable job in other areas of the case, but there was one single piece of evidence, that grand jury testimony, that essentially sunk his client's case. He had an easy, not novel argument available to him under 801D1A, that under Vargas and Owens, it's not admissible because of the invocation of privilege. An argument that was even suggested to him by counsel for a co-defendant, and an argument that Judge Hogan actually invited follow-up on, said, Mr. Weintraub made a pretty good argument here. I'd like to hear more about it. Nobody followed that up. And that argument is clear, and it's based in case law. What do we do about the fact that, at least in hindsight, the district court says, well, it doesn't really matter because it falls within the residual exception anyway? Well, Your Honor, with respect to that, number one, I would point out that the residual exception was never discussed at the trial court level, not by the district court, not by the prosecutor. Secondly, the residual exception requires that notice be given of a party's intent to admit evidence under the residual exception. And I think because notice is required by the proponent of that evidence, that sort of implicitly limits a court and stops a court from sua sponte raising a residual exception analysis at this stage in the game. It was never brought up at the trial level. There was never any notice given that it was going to come in. And those two things alone preclude it from being used kind of after the fact as support for this case. And secondly ---- I mean, that's sort of an argument that the district court was wrong, not that the trial counsel was ineffective. Well, trial counsel wasn't ineffective for not arguing residual exception because nobody argued it at that level. And it wouldn't have been admissible under the residual exception because there was no notice given. The other thing that the district court did in its most recent opinion was it didn't make any analysis regarding the equivalent circumstantial guarantees of trustworthiness that are required under the residual exception. What it did was just recite the factors that Marcini gave us. It didn't do any analysis on those factors. It just says I find this without doing any of the detailed analysis that Marcini says is required. So for those reasons, Judge, I don't think we can consider this harmless because of this residual exception issue that's been raised just for the very first time in habeas at the district court level. I think that ---- I guess my concern is that the district court obviously thought the testimony should be admitted. And when ---- if one argument was wrong, it was going to jump to another one. So it's more trial counsel made an argument. It may not have done it as well as in hindsight we think the trial counsel should have done it. But the district court seemed to say this evidence is coming in. So more going perhaps to the prejudice prong. Well, again, Your Honor, because the residual exception wasn't raised at that level, I don't think it can come in under that exception. And what we do have to remember is something Strickland taught us, and that is when you're talking about prejudice on an ineffective assistance claim, the assessment of whether there's prejudice has to proceed on the assumption that the decision maker, i.e., the trial judge in this case, is reasonably conscientiously and impartially applying the standards that govern that decision. So we have to assume, Strickland tells us, that we have to assume that if the correct argument is presented, that a district court judge would grant that or at the very least an appellate court would reverse it on an appeal. May I ask you just one quick question about the uncertified claims? Yes. Now, as I understand it, those weren't raised on direct appeal. And I believe under our case law we need to find cause and prejudice for not raising them on direct appeal before we can consider them or grant the motion to extend the certificate of appealability. Are you arguing cause and prejudice as to those uncertified claims? Your Honor, we are not arguing anything regarding those uncertified claims at this point. The reason those are in there is because at the time we filed our opening brief, there was actually a motion pending before the district court to have these claims certified. So we had no choice but to raise them as uncertified at that point because we were also denied an extension to file the opening brief. Since that opening brief was filed, the district court denied our motion to certify those claims, so we're not arguing anything. But they're not before us now. No. So you've dropped them. Just because the district court denies you certification doesn't mean you have to. No, I understand that, Judge, but we haven't presented any arguments regarding cause and prejudice. You're down to about two minutes. Thank you, Your Honor. Thank you. Ms. Zussman. Good morning. May it please the Court. Kelly Zussman appearing on behalf of the United States. I think the first point that I want to address, Your Honors, is the notion that this Court's prior ruling was dicta. I think the good starting point there is that Judge Hogan didn't consider it dicta. He cited to this Court's decision not once but I believe twice in his opinion on the habeas relief. And what Judge Hogan said was essentially the trial counsel here could have made all of the objections in the world about the admission of that prior grand jury testimony, and he wasn't going to sustain them. Judge Hogan determined, relying almost exclusively on this Court's older decision in the United States v. Marchini, that Mrs. Ramirez's prior grand jury testimony was, in fact, admissible under pre-Crawford standards. He made specific credibility findings. But that's the Confrontation Clause issue, not the rule of evidence issue that the opposing counsel is arguing, right? Marchini actually addresses both. And I think Judge Hogan, as kind of a shorthand form during trial, referred repeatedly to Marchini and the grand jury testimony satisfying both standards that are addressed in Marchini. So it was admissible both under 801D and under the Confrontation Clause. I think the other sort of unusual wrinkle in this case is that unlike Crawford and a lot of the other Confrontation Clause cases, Mrs. Ramirez here, although she cross-examination about the circumstances surrounding her grand jury testimony. It takes up approximately 40 to 50 pages of the transcript of both Mr. Storple, trial counsel, and counsel for the co-defendants, questioning her extensively about her grand jury statements. And, in fact, at trial, the jury heard Kathy Ramirez say, I lied to the grand jury. They heard Mrs. Ramirez say that she made it all up because she was desperate to get her children back. So that's why it doesn't neatly fit within. Where does that argument go? I understand what you're saying, but what consequence are we supposed to attach to that? Well, in terms of both the admission under 801D, the fact is that she was cross-examined about that statement. And that's one of the provisions of 801D, is that the inconsistent with declarant's testimony and that she was subject to cross-examination concerning the statement. And here she was, subject to cross-examination concerning that prior statement. So, I mean, the jury had the entire mix of information about Kathy Ramirez and her credibility. And, in fact, defense counsel, I think, made pretty effective use of that in closing argument. He called Kathy Ramirez a liar and told the jury that it couldn't rely upon her for anything. And, in fact, Kathy Ramirez had admitted that. I think the entire mix of information before the jury was at least as accurate as it could have been. I think Judge Hogan here appropriately considered all of the evidence and all of the testimony. He made credibility findings. He said Kathy Ramirez was not credible in her recantation. He found that it was, in fact, credible that the information given to the grand jury was accurate and reliable, and he admitted it on that basis. So I think, at least in terms here, what's really dispositive is, I think, Judge Hogan's ruling that regardless of what Mr. Storkel may have done, and, in fact, he did object to the introduction of the grand jury testimony. I counted ten times over the course of her testimony that he stood up and objected and tried to enforce that marital privilege, and he was consistently overruled. Judge Hogan said anything he said wouldn't have mattered. It was reliable. It was admissible. This Court, in reviewing him on direct appeal, said it was admissible, and so, therefore, there simply was no ineffective assistance of counsel. I'm sorry. Go ahead. I'm going to move to another topic, so. On the first appeal in our prior decision in this case, was there any argument about the admissibility of the grand jury testimony? I didn't see it in the briefs. We provided the Court with a copy of the original brief that was filed on direct appeal, and it's the broad subject is raised. The second issue in that appeal was whether or not the trial court erred when it did not enforce the marital communications privilege in front of the jury. Now, because Kathy Ramirez invoked and didn't testify against her husband, the only thing this could refer to is the prior grand jury testimony. So I believe this was enough to raise it, and that's why, in fact, the original panel, in fact, affirmed and found that it was, in fact, admissible once she invoked. Let me go to the question as to whether or not there should have been a motion for severance. If Ramirez had been severed and tried separately, what would have happened differently in the trial against Ramirez now standing alone? Let's see. That's a good question. In terms of whether or not the government would have called Kathy Ramirez to the stand at all, I can't answer that. I don't know. It may well have, and may well have done exactly what it did here, which is then attempt to introduce her prior grand jury testimony, since there was no waiver of the privilege there. How much of her testimony in the trial that we actually had inculpated the other defendants? I understand that it did to some degree. How important was her testimony as against the others? Her testimony against particularly Angie and Buck Jenkins was extensive. She said that she went up there 300 or 400 times. I think her testimony relied upon, at least in part, to determine drug quantity. So, yes, she was a damaging witness as to Angie and Buck Jenkins. I understand then that the pressure to admit it, pressure on the district judge, pressure on you to want to have that come in, is much stronger because you've got all these defendants there. Can we draw some inference either as to whether or not you would have pushed to have her grand jury testimony admitted if Ramirez had been the only defendant, or inference as to what the district judge might have decided differently had you asked to get it in? Is there enough here that we can make up our minds on that point? I think it is highly likely that at least the prosecutor would have attempted to have gotten in that testimony. I think it was entirely unclear up until the time of trial whether or not she was or was not going to invoke. I noticed from the Court's calendar that there was another case involving Marcos and did not invoke her marital privilege. So in terms of whether or not she would have invoked, certainly if she didn't invoke, I think the government would have called her as a witness against Marcos because she had very damaging testimony. She was a percipient witness to his drug dealing and, in fact, his connection to his sister's methamphetamine production operation. So that's why it's a little bit speculative, but I think it's highly likely that we would have at least attempted to call Cathy Ramirez, even in a severed trial with Marcos Ramirez. Oh, yes, Judge Bam. May I ask a question? I have a note here. Is it the government's position that the issue of grand jury testimony admissibility is not within the certificate of appealability? That's correct. The only issue that has been certified is ineffective assistance of counsel. And that's why I think it makes this case much, much narrower than otherwise it might be tempted to go into in terms of the admissibility or not admissibility. It's really whether or not John Storkel could have done anything more to convince Judge Hogan to exclude that grand jury testimony. But once we're at IAC, which is where we are, one of the things we have to decide is, okay, if it falls below the level of professional competence, is that harmless error? So if we were to say that he should have objected in various ways or he should have asked for severance because it might have kept it out, at some point we get to, okay, what would have happened? Would it have been kept out? Was it admissible? Of course, that's not directly, but I think you have to get to that at some point if you're talking to IAC. Well, and that's what Judge Hogan did. I mean, Judge Hogan said, you know, even if he could have done more, even if he did do more, then I still would have done the same thing. So there's simply no prejudice. Just one other additional point on the severance, which was this Court on direct appeal, although you found that there was no plain error, I think the phrasing that was used was there was no error, nonetheless plain error. And in fact, there were motions to sever that had been filed by Buck and Angie Jenkins who wanted to sever their cases from that of Marcos Ramirez, and Judge Hogan denied those. The defendants usually want to sever, and the judges usually don't want to let them do it. Unless there are any further questions, the government will submit. Thank you. Thank you. Mr. McHenry. Just a few brief points, Your Honor. First, I disagree with opposing counsel's position that Judge Hogan has stated somewhere that he was going to let this testimony in regardless of the arguments that he heard. What he said at trial was, I heard a very interesting argument from Mr. Weintraub. I would love to hear more about that. They broke for the evening. They showed up the next morning, and my client's trial counsel said, I'm comfortable with the Court's ruling if he's going to let it in. So the trial court actually said, give me some more argument because I'd still like to consider this. It wasn't that he said, whatever happens, I'm letting this in. Secondly, Your Honor, the Marcini case, as Judge Ahuda pointed out, was about confrontation. It was not in any way related to an 801d1a analysis. I just want to make that clear, that that case was strictly about the residual exception and the confrontation clause. In terms of her being available for cross-examination regarding the subject, the question is whether she responded willingly to questions. That's in the case law. And she certainly did not. She spent much of the cross-examination time obfuscating, saying things like, I don't have to testify about that if my husband is involved. I don't have to answer that if my husband is involved. She made inquiries of the Court saying, do I have the right not to answer that if my husband is involved? She was not a willing respondent to any of the questions on cross-examination, particularly with respect to the grand jury. Now, whether this was raised, again, on direct appeal, the Court had asked what exactly was presented on direct appeal. The issues, and this is on the State's Supplemental Excerpt of Record, page 17, it shows what the issues presented to the Court on direct appeal were. And they were, again, whether there was error when she was forced to invoke in front of the jury, whether there was error when it didn't enforce a communication privilege, and, again, a sua sponte question, whether the Court should have sua sponte allowed questions, should have allowed severance. Certainly, the issue of the admissibility of the grand jury testimony itself was not presented on direct appeal, and this Court did not discuss that. Finally, I would just again point out that, Judge Fletcher, you're asking what would have happened had this testimony not come in or had there been a severance. I think Judge Hogan spoke to that in the original opinion that granted this motion on confrontation grounds. When he reversed, in light of all the other evidence there was, he still said this had a substantial and injurious effect on the verdict. So I think that's very good evidence, coupled with the prosecution's evidence at trial that said, the closing argument where he said, without Kathy Ramirez, we don't have a case against Mr. Ramirez. Okay. Thank you very much. Thank both sides for your arguments. The case of United States v. Ramirez is now submitted for decision. We'll be in recess for 10 minutes.
judges: Fletcher W. , Bea, Ikuta